# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WAYNE SUTTON, | Case No. 1:21-cv-01097-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

_____/

## I.     INTRODUCTION

Plaintiff Steven Wayne Sutton ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 8.)

## II.     BACKGROUND

Plaintiff was born on December 21, 1968, has at least a high school education, and can communicate in English. (Administrative Record ("AR") 36, 264, 274, 332, 352.) On February 23, 2018, Plaintiff protectively filed claims for DIB and SSI payments, alleging disability beginning on December 21, 2012, due to stage 4 cirrhosis, depression, hepatitis, and anemia. (AR 24, 33, 70, 86, 104, 119, 150, 264, 274, 330.)

**A.     Relevant Evidence of Record[3]**

   **1.     Medical Evidence**

In September 2014, Plaintiff complained of depression, anxiety, and paranoia, and noted that he had been off his medications for one to two weeks. (AR 1171–72.) Upon mental status examination, he was alert, oriented and cooperative. (AR 1172.) Plaintiff had good eye contact, but depressed psychomotor activity and mumbled speech. (AR 1172.) Plaintiff had signs of paranoia and his mood and affect were abnormal. His judgment was grossly intact with fair insight. (AR 1172.) He was alert, cooperative, casually dressed, with adequate grooming and hygiene. (AR 1172.)

Upon being incarcerated in May 2016, Plaintiff presented for a mental health evaluation. (AR 807–17.) He was noted to be calm, pleasant, and respectful. (AR 811.) He had a depressed mood and restricted affect, with normal speech. (AR 817.) Plaintiff's fund of information, intellectual functioning, concentration, attention, and memory were all noted to be fair. (AR 812.) In October 2016, while incarcerated, Plaintiff requested to be removed from the mental health program. (AR 1100.) It was noted he took Wellbutrin for about a year but stopped as "he felt he did not need" it. (AR 1100.) He denied any current depression. (AR 1100.)

In June 2018, Plaintiff presented for a mental evaluation by Lance A. Portnoff, Ph.D. (AR 379–83.) Plaintiff's complaint was noted to be cirrhosis of the liver, stage 4. (AR 379.) Plaintiff reported "some intrusive memories, anxiety and hypervigilance, sometimes thinks people are talking about him, panic attacks about six times per month, and overreactive anger - suggestive of

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

PTSD." (AR 379.) He also reported "chronic depression, without symptoms or suicidal ideas." (AR 379.) He reported that he does not need help with bathing, dressing, and grooming, but has inadequate motivation for them. (AR 381.) Plaintiff can prepare food for himself and performs some chores. (AR 381.) He was casually dressed and adequately groomed. (AR 381.)

Dr. Portnoff found Plaintiff demonstrated adequate concentration, persistence, and pace. (AR 381) Plaintiff's speech was spontaneous and prompt but mildly flattened, and his thought process was coherent and organized. (AR 381.) Dr. Portnoff found Plaintiff's thought content appropriate to the situation. (AR 381.) Plaintiff denied any hallucinations and active suicidal ideation. (AR 381.) Plaintiff's affect as expressed in speech and demeanor was characterized by mild to moderate flattened depression. (AR 397.)

Dr. Portnoff noted Plaintiff was oriented to time and place and was in touch with his immediate surroundings. (AR 381.) His immediate recall of three words was intact, he had a delayed recall of two out of three words, and he was able to remember autobiographical information. (AR 381.) His fund of knowledge was normal and he could perform simple subtraction. (AR 382.) Plaintiff's social judgment was inadequate, and he had adequate insight into his psychological symptoms. (AR 382.)

Dr. Portnoff diagnosed Plaintiff with "Unspecified Depressive Disorder" and "Post Traumatic Stress Disorder." (AR 382.) He indicated that the "prognosis for his UDD/PTSD is fair, depending upon access/response to an appropriate psychotropic regimen, and his underlying health status." (AR 382.)

Plaintiff presented to the Emergency Department in April 2019, complaining of blood in his stool and abdominal pain. (AR 849–63.) He was admitted, received a blood transfusion, and was assessed with a "[g]astrointestinal hemorrhage, unspecified gastrointestinal type." (AR 853–54.)

In July 2019, Plaintiff presented for a mental status examination while on parole. (AR 894–97.) He reported a "little better" mood but "struggling to get to sleep at night." (AR 894, 896.) He reported auditory hallucinations, but linear and goal-directed thought processes were noted. (AR 896.) Plaintiff's demeanor was "sad and nervous" and anhedonia was present. (AR 896.) He

was noted to have increased distractibility and poor concentration. (AR 896.) Plaintiff had racing thoughts and appeared guarded, suspicious, and hypervigilant. (AR 896.) His insight and judgment were impaired, but his reliability was "good." (AR 897.) Plaintiff presented with both hopelessness and tearfulness. (AR 896.)

Plaintiff's mental health status was unchanged in September 2019, although earlier in the month it was noted that Plaintiff "looked good" and "did not look depressed anymore." (AR 890–93.) He reported taking an anti-depressant, which was helping him. (AR 893.) It was noted in November 2019 Plaintiff was living at an addiction treatment facility. (AR 1120–21.)

### 2. Opinion Evidence

Following his examination of Plaintiff in June 2018, Dr. Portnoff opined that Plaintiff can manage his own funds independently, is able to perform simple and repetitive tasks, and has no limitations in his ability to perform detailed and complex tasks or to accept instructions from supervisors. (AR 382.) He found that Plaintiff had mild limitations in his ability to interact with coworkers and the public due to his depression and PTSD. (AR 382.) Plaintiff had no limitations in his ability to work on a consistent basis without special or additional instruction or to maintain regular attendance in the workplace from a psychological standpoint. (AR 382) According to Dr. Portnoff, Plaintiff had mild limitations in his ability to complete a normal workday or workweek without interruptions from a psychiatric condition due to mood/anxiety symptoms. (AR 382.) Plaintiff's ability to deal with the stress encountered in a competitive work environment was mildly impaired. (AR 382.)

In July 2018, state agency physician Preston Davis, Psy.D., reviewed the record and determined that Plaintiff's medically determinable mental impairments of "depressive, bipolar, and related disorders" were not severe. (AR 79–80, 95–96.) In October 2018, state agency physician Harvey Bilik, Psy.D., reviewed the record on reconsideration and affirmed Dr. Davis' findings that Plaintiff had no severe mental impairments. (AR 111–112, 126–27.)

In May 2019, psychiatrist Ed Morales, M.D., opined that Plaintiff required a "significant degree of assistance and direction to perform tasks," and that his "[d]epression impairs concentration which is needed to complete tasks in a reasonable amount of time." (AR 647.) Dr.

Morales noted that Plaintiff's "level of paranoia and anxiety is such that the [he] cannot tolerate being around people due to the fear of being attacked or followed" and that supervision of his work "could lead to emotional decompensation." (AR 647.) According to Dr. Morales, Plaintiff's "[c]apacity to interact appropriately with others, communicate effectively, concentrate, complete tasks, and adapt to stressors common to the work environment (including the pressures of time, supervision, and decision making) are significantly impaired." (AR 647.) Dr. Morales rendered the identical opinion in September and December 2019. (AR 890, 1117.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on July 12, 2018, and again on reconsideration on October 18, 2018. (AR 101–102, 133–34.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 157–58.) The ALJ conducted a hearing on January 7, 2020. (AR 44–68.) Plaintiff appeared at the hearing with his attorney and testified as to his alleged disabling conditions. (AR 48–61.) A Vocational Expert ("VE") also testified at the hearing. (AR 61–67.)

**C.   The ALJ's Decision**

In a decision dated February 28, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 24–38.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 26–38.) The ALJ decided that Plaintiff met the insured status requirements of the Act through June 30, 2019, and he had not engaged in substantial gainful activity since December 21, 2012, the alleged onset date (step one). (AR 26–27.) At step two, the ALJ found Plaintiff had no severe impairments from December 21, 2012, through December 31, 2013, and that he had the following severe impairments beginning on January 1, 2014: hepatitis C, diabetes mellitus, residuals from a gastric bypass operation, cirrhosis of the liver, migraine headaches, and a gastric ulcer. (AR 27–31.) Since January 1, 2014, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 31–32.)

5

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that since January 1, 2014, Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (AR 32–34.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 33.)

The ALJ determined that since January 1, 2014, Plaintiff has been unable to perform his past work (step four) but that, given his RFC, he retained the capacity to perform a significant number of other jobs in the local and national economies (step five). (AR 36–37.) The ALJ concluded that Plaintiff was not disabled from December 21, 2012, through the date of their decision. (AR 37.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 3, 2020. (AR 10–15.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

6

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only]

7

when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  The Court must instead determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"

*Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.        DISCUSSION

Plaintiff contends that the ALJ committed harmful error in failing to consider his mental health impairments severe at step two by "ignoring" evidence unfavorable to him and "dismiss[ing]" the opinion of psychiatrist Dr. Morales. (*See* Doc. 14 at 10.) Plaintiff further contends that the ALJ's finding that he did not meet or equal Listing 5.05A is erroneous because it lacks the requisite analysis, and the medical evidence shows he suffered from a gastrointestinal hemorrhage. (*Id.* at 13–14.)

The Court disagrees with Plaintiff's allegations of error and shall affirm the ALJ's decision.

**A.     Legal Standard**

At step two of the sequential evaluation, the ALJ determines which of Plaintiff's alleged impairments are "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id*. An ALJ must consider all the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)).  The purpose of step two is to operate as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability."); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when

determining the RFC.") (internal citations omitted). The plaintiff bears the burden of proof at step two to show that an impairment qualifies as severe. *Bowen*, 482 U.S. at 146 n.5.

**B.     The ALJ Did Not Err at Step Two**

In support of his argument that the ALJ erred at step two by failing to deem Plaintiff's mental impairments severe, Plaintiff relies on records after the "onset of specialized treatment" beginning in May 2019 and limitations opined by psychiatrist Dr. Morales. (*See* Doc. 14 at 9–12.)

**1.     Evidence Considered by the ALJ**

Contrary to Plaintiff's assertion, the ALJ addressed the mental examinations from 2019, when Plaintiff sought "specialized mental health treatment": "[S]ome mental status examinations beginning in July 2019 noted some problems with paranoia . . . with mood and affect . . . with distractibility and concentration . . . [and] with insight and judgment." (AR 28–29.) The ALJ also noted that these records showed that Plaintiff's "thoughts were linear and goal-directed." (AR 29.) Plaintiff fails to address this finding in the medical evidence on which he relies, and he further fails to show the ALJ ignored probative evidence related to his mental impairments at step two of the evaluation.

Acknowledging that Plaintiff received mental health treatment for his mental symptoms beginning in May 2019, the ALJ nevertheless reasonably concluded that the objective medical evidence from most of the relevant period—from 2012 through May 2019—supported only mild limitations in Plaintiff's mental functioning. (AR 28–30.) A mental status examination in September 2014 showed Plaintiff was alert, oriented, cooperative, casually dressed, with adequate grooming and hygiene and good eye contact. (AR 1172.) His judgment was grossly intact with fair insight. (AR 1172.) In May 2016, Plaintiff was noted to be calm, pleasant, and respectful, with normal speech  (AR 811.) His fund of information, intellectual functioning, concentration, attention, and memory were all found to be fair. (AR 812.)

In October 2016, while incarcerated, Plaintiff requested to be removed from the mental health program. (AR 1100.) It was noted he took Wellbutrin for about a year but stopped as "he felt he did not need" it. (AR 1100.) He denied any current depression. (AR 1100.) In June 2018, Dr. Portnoff found Plaintiff demonstrated adequate concentration, persistence, and pace. (AR 381)

His thought process was coherent and organized, and his thought content appropriate to the situation. (AR 381.) Based on this examination, Dr. Portnoff opined that Plaintiff had no more than mild limitation in any noted area. (AR 381.)

While Plaintiff may disagree with the inferences drawn by the ALJ from the evidence and may offer an alternative interpretation of it, the Court finds that ALJ's step two findings are reasonable and supported by substantial evidence. *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) ("While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the [ALJ]."); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("When the evidence is susceptible to more than one rational interpretation, and the [ALJ's] conclusion is one such rational interpretation, that interpretation must be upheld.").

**2.     Rejection of the Opinion of Dr. Morales**

a.     Medical Opinion Evidence Generally

Plaintiff's claims for benefits are governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), § 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the

11

revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Morales' opinion.

### b. Analysis

In weighing Dr. Morales' opinion related to Plaintiff's mental functioning, the ALJ reasoned as follows:

> Dr. Morales' opinion is somewhat supported by his treating examinations, which noted some issues with concentration, distractibility, and mood (see, e.g., Exhibit 19F/6). However, Dr. Morales only began treating the claimant in May 2019. His opinion is inconsistent with the lack of any other specialized mental health treatment from 2012 through 2018. His opinion is further inconsistent with examinations by non-mental health providers, which were generally normal (Exhibits 12F/157-158; and 21F/4). It is also inconsistent with the consultative psychological examination, which noted only mild findings (Exhibit 1F). For these reasons, this opinion is not persuasive.

(AR 30.)

The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Morales' opinion. As to supportability, the ALJ properly considered that Dr. Morales' opinion was "somewhat supported" by his treating examinations showing issues with concentration, distractibility, and mood, but that the length of his treatment of Plaintiff, which totaled seven visits beginning in May 2019 (*see* AR 635, 638, 642, 647, 890, 1117–18), undermined the supportability of his opinion (AR 30). *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3) (relationship with the claimant is a factor in evaluating the persuasiveness of an opinion, including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination). *See also Michael R. v. Kijakazi*, No. 2:21-CV-00004-LRS, 2021 WL 5149705, at *9 (E.D. Wash. Nov. 4, 2021) (reasonable for the ALJ to determine that six to seven visits, spread over the course of the entire adjudicatory period, was as a relatively "brief" treatment history such that it reasonable to find opinion unpersuasive).

As to consistency, the ALJ found Dr. Morales' opinion concerning Plaintiff's mental limitations was generally inconsistent with the other medical evidence, including mental status examinations in the record. As cited by the ALJ, and as detailed above, a mental status examination in September 2014 showed Plaintiff was alert, oriented, cooperative, casually dressed, with

adequate grooming and hygiene and good eye contact. (AR 1172.) His judgment was grossly intact with fair insight. (AR 1172.) In May 2016, Plaintiff was noted to be calm, pleasant, and respectful, with normal speech (AR 811.) His fund of information, intellectual functioning, concentration, attention, and memory were all found to be fair. (AR 812.) In June 2018, Dr. Portnoff found Plaintiff demonstrated adequate concentration, persistence, and pace. (AR 381) His thought process was coherent and organized, and his thought content appropriate to the situation. (AR 381.)

The ALJ observed that Dr. Morales' opinion also conflicted with the other opinion evidence in the record. (AR 29–30.) Dr. Portnoff opined that Plaintiff had no more than mild limitation in any noted area. (AR 381.) The state agency physicians similarly found Plaintiff's medically determinable mental impairments of "depressive, bipolar, and related disorders" were not severe. (AR 79–80, 95–96, 111–12, 126–27.) Plaintiff does not challenge the ALJ's deeming of these opinions "persuasive." (AR 29–30.)

Based on the foregoing objective medical evidence and opinion evidence, the ALJ's finding that Dr. Morales' opinion was inconsistent with the longitudinal record as a whole is legally sufficient and supported by substantial evidence. It was therefore reasonable for the ALJ to conclude that the record did not support the severity of Dr. Morales' opined restrictions, including that Plaintiff's "[c]apacity to interact appropriately with others, communicate effectively, concentrate, complete tasks, and adapt to stressors common to the work environment (including the pressures of time, supervision, and decision making) are significantly impaired." (AR 647.). *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

**C.    The ALJ Did Not Err in Finding Plaintiff Did Not Meet Listing 5.05A**

   **1.    Legal Standard**

At the third step of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Tackett*, 180 F.3d at 1098. The Listings set forth by

14

the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted) (emphasis in original). At Step Three of the sequential evaluation, Plaintiff bears the burden of demonstrating that his impairment meets or equals a Listing. *Burch*, 400 F.3d at 683.

For a claimant's impairment to meet a listing, it must, for a period of 12 continuous months, "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (citations omitted) (emphasis in original); *see also Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir. 1985); 20 C.F.R. §§ 404.1525(d), 416.925(d) ("To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); 20 C.F.R. pt. 404, subpt. P, app'x. 1 (stating the 12-month rule). Alternatively, a claimant can qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment by presenting "medical findings equal in severity to *all* the criteria for the one most similar impairment." *Sullivan*, 493 U.S. at 531 (citations omitted); *see also Marcia v. Sullivan*, 900 F.2d 172, 175–76 (9th Cir. 1990).

**2.   Discussion**

a.   <u>Analysis at Step Three</u>

As an initial matter, Plaintiff avers the ALJ erred by providing a "boilerplate" finding that Plaintiff did not meet or equal the requirements of Listing 5.05A. (Doc. 14 at 13.) At step three of the sequential analysis, the ALJ considered Listing 5.05 and concluded that "the record fails to demonstrate clinical findings or medical evidence establishing these requirements." (AR 32.)

In *Marcia*, upon which Plaintiff relies (*see* Doc. 14 at 14), the claimant contended the ALJ's finding at Step Three was insufficient to show that the ALJ actually considered whether the medical evidence equaled a listed impairment. 900 F.2d at 176. The ALJ's finding as to medical equivalence was that "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings to Subpart P of Regulation 4 or the duration requirements of the Act . . . ." *Marcia*, 900 F.2d at 176. The Ninth Circuit found this was

insufficient and held that "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Id.*

Subsequently, however, in *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001), the Ninth Circuit held that an ALJ's discussion and evaluation of the evidence to support his conclusion was sufficient even if not discussed under the relevant section of the ALJ's decision. 236 F.3d at 513. *See also Gonzalez v. Sullivan*, 914 F.2d 1197, 1200–01 (9th Cir. 1990) (The ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence.); *Duarte v. Comm'r of Soc. Sec.*, No. 1:15-cv-01860-SAB, 2017 WL 495645, at *5 (E.D. Cal. Feb. 6, 2017); *Guerra v. Astrue*, No. EDCV 09-02274-MAN, 2010 WL 5088774, at *6 (C.D. Cal. Dec. 7, 2010) ("An ALJ's lack of formal analysis and findings at Step Three . . . will not constitute reversible error when: the ALJ's subsequent discussion of the relevant medical evidence supports a conclusory finding; and with respect to equivalency, plaintiff fails to proffer a theory or evidence showing that his combined impairments equal a Listing."). The Ninth Circuit has also held that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Burch*, 400 F.3d at 683).

Here, although the ALJ did not cite to or discuss the medical evidence when determining that Plaintiff did not meet the requirements of Listing 5.05A, earlier in the step three evaluation (during consideration of Listing 5.02), the ALJ stated that it expressly considered Plaintiff's representative's brief (AR 31), where he makes the same arguments as presented here. (*Compare* AR 370 *with* Doc. 14 at 14.) The Court therefore does not assign error at step three. *See Lewis*, 236 F.3d at 513. Even if the ALJ did not adequately explain how Listing 5.05A was not met, such error would be harmless because, as set forth below, Plaintiff does not present evidence showing that he meets Listing 5.05A. *See McMahon v. Berryhill*, 713 F. App'x 693, 694 (9th Cir. 2018) (finding ALJ's cursory step three analysis harmless error given evidence showing the claimant could not meet a required element of a Listing); *Aldridge v. Colvin*, No. CV-14-00755-PHX-SPL, 2015 WL 13603772, at *8 (D. Ariz. Aug. 4, 2015), *aff'd sub nom. Aldridge v. Berryhill*, 693 F.

16

App'x 657 (9th Cir. 2017).

### b. Consideration of Listing 5.05A

Plaintiff contends that the ALJ erred in finding he did not meet or equal Listing 5.05A. Listing 5.05A requires that the claimant have "chronic liver disease," along with

> Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood.

20 C.F.R. pt. 404, subpt. P, app'x 1, § 5.05A. "Under 5.05A, hemodynamic instability is diagnosed with signs such as pallor (pale skin), diaphoresis (profuse perspiration), rapid pulse, low blood pressure, postural hypotension (pronounced fall in blood pressure when arising to an upright position from lying down) or syncope (fainting)." *Id.* § 5.00D5.

Although there is evidence in the record that Plaintiff was hospitalized for "gastrointestinal hemorrhage" and received a transfusion of four units of blood (*see* AR 849–63), the medical evidence fails to support Plaintiff's contention that he met or equaled "all" of the requirements for Listing 5.05A for at least 12 continuous months during the relevant period. *See Sullivan*, 493 U.S. at 530, 531. Plaintiff maintains that medical evidence demonstrates he was "hemodynamically unstable" in April 2019 (Doc. 14 at 14), yet the record contains no such diagnosis of hemodynamic instability, as is required by the Listing. *See Marin v. Astrue*, No. 1:10-CV-00375-SKO, 2011 WL 2457941, at *6 (E.D. Cal. June 16, 2011) (no error in finding the plaintiff did not meet Listing 5.05A where there was no diagnosis of hemodynamic instability in the record, and observing that the plaintiff "is not competent to opine that his symptoms should have been diagnosed as hemodynamic instability.") (citing Social Security Ruling 83–19, 1983 WL 31248, at *2 (An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment")). *See also* 20 C.F.R. pt. 404, subpt. P, app'x 1, §§ 5.00D5, 5.05A. Furthermore, although Plaintiff posits that the record shows evidence of a "gastrointestinal hemorrhage" in April 2019 (Doc. 14 at 14), he ignores the fact that such hemorrhage was deemed "unspecified" in type (*see* AR 855) and not, as Listing 5.05A requires, a

hemorrhage attributable to "esophageal, gastric, or ectopic varices." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 5.05A.

In sum, the evidence provides substantial support for the ALJ's conclusion that Plaintiff did not meet or equal all the requirements of Listing 5.05A, and Plaintiff has not met his burden of showing otherwise. *See Sullivan*, 493 U.S. at 530; *Burch*, 400 F.3d at 683. Accordingly, the Court finds that the ALJ did not err in finding that the medical evidence failed to establish that Plaintiff's gastrointestinal hemorrhage met or equaled Listing 5.05A.

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **September 7, 2022**             /s/ *Sheila K. Oberto*      
                                                             UNITED STATES MAGISTRATE JUDGE